UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MATTIE L. SMITH                                                                    PLAINTIFF

v.                                                                  Civil No. 4:18-cv-00165-GHD-JMV

MISSISSIPPI DEPARTMENT OF CHILD
PROTECTIVE SERVICES, *et al.*                                                     DEFENDANTS

## MEMORANDUM OPINION

The defendants in this case, the Mississippi Department of Child Protective Services, Jess H. Dickinson, and Misty McCammon, have filed a motion for summary judgment [33]. For the reasons set forth below, the motion is granted.

### I. Background

Mattie Smith is a social worker with the Mississippi Department of Child Protective Services ("CPS") in its Grenada office. Mattie Smith Depo. at 5 [33-1]. On March 17, 2017, Smith and her supervisor, Misty McCammon, went for an after-work dinner. *Id.* at 15. During their car ride to dinner together, McCammon called her boyfriend on speakerphone. *Id.* at 17. During their conversation, McCammon and her boyfriend began discussing group sexual activities. *Id.* at 18–19. Smith did not participate in the conversation but did hear it. *Id.*

A few days later (the exact date is unknown) Smith and McCammon were having a phone conversation after work. *Id.* at 20. During this phone call, McCammon's boyfriend, speaking from the background, invited Smith to join in group sex with the couple. *Id.* Smith refused the invitation. During the call, however, Smith did ask McCammon whether she really participated in group sex. *Id.* McCammon replied, "I can do a person and see them the next day and act like nothing never [sic] happened." *Id.* at 20. Smith did not allege any other instances of conversation involving sexual topics. *Id.* at 21.

1

Smith, who is black, alleges that after she refused the sexual offer, McCammon, a white female, began retaliating against her. In 2017, Smith received two grievances filed against her by Carnell Farmer and Antonio Bledsoe, two police officers with the Grenada Police Department, who claimed that Smith refused to work a case and was rude to them on a call. *Id.* at 34–35. These grievances were placed in Smith's personnel file. *Id.* at 35. Smith alleges that Farmer and McCammon had a private relationship. *Id.* at 37–39. She further alleged that she believed Grenada police officers followed her at McCammon's direction, although she admitted she had no proof beyond her speculation. *Id.* at 55. In late April, Smith filed a sexual harassment complaint against McCammon. Smith also alleges that McCammon began transferring "ill-prepared" and unwanted cases from white employees to Smith and other black employees. *Id.* at 57.

On February 6, 2018, filed a charge of discrimination with the EEOC. The EEOC issued a Right to Sue letter, and Smith filed her complaint within 180 days of her receipt of that letter.

Smith brought this action against the CPS, Commissioner Jess Dickinson in his official capacity, and McCammon in her official and individual capacity, for race discrimination, sex discrimination, and retaliatory discharge. Defendants now move for summary judgment.

## II. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

### III. Analysis

Smith brings claims for 1) race discrimination in violation of Title VII of the Civil Rights Act of 1964; 2) sex discrimination under Title VII; 3) retaliatory discharge in violation of Title VII; 4) race discrimination in violation of 42 U.S.C. § 1981; and 5) retaliatory discharge in violation of § 1981.

3

At the outset, the Court finds Smith's retaliatory discharge claims under Title VII and § 1981 are entirely without merit. Smith has never been terminated from CPS and still works there to this day. Therefore, the Court grants summary judgment in favor of defendants on those claims.

### A. Title VII Claims

Smith asserts that Defendants violated Title VII by discriminating against her because of her race and sex. Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Smith seeks to impose liability on McCammon in her individual capacity. Individual employees are not liable under Title VII. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003). Therefore, summary judgment on Smith's Title VII claims is granted in favor of McCammon.

Smith also brings her Title VII claims against Dickinson and McCammon in their official capacities. A plaintiff cannot maintain a Title VII action against both her employer and one its agents in his or her official capacity. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). On Smith's Title VII claims, therefore, the Court grants summary judgment in favor of Dickinson and McCammon in their official capacities.

*1. Race Discrimination*

Smith alleges that CPS racially discriminated against her. She asserts that: (1) she and other black coworkers were assigned more cases or less desirable cases than white employees; (2) she was required to have all tasks complete prior to transferring a case load, while white coworkers were not; (3) she was accused of unprofessional behavior; (4) she suffered from unwarranted employment discipline; (5) she was forced to take "calls" before 5:00

p.m.; and (6) she received "verbal reprimands" that contained negative comments from her supervisor. Smith alleges these instances created a hostile work environment.

To establish that a hostile work environment existed, Smith must provide evidence that: (1) she belongs to a protected group; (2) she was subject to unwelcomed harassment; (3) the harassment complained of was based on the protected class or group; (4) the harassment complained of was so severe or pervasive that it affected the terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Jones v. Flagship Intern.*, 793 F.2d 714, 719–20 (5th Cir. 1986).

Smith has not provided evidence to establish that CPS created a hostile work environment. The Court groups Smith's assertions broadly into two categories: 1) her claims about disciplinary actions and reprimands she faced; and 2) her claims about unequal treatment in receiving assignments. There is no evidence to support a hostile work environment on either group of claims. There is no evidence that the disciplinary actions she complains of were related to her race. She does not show evidence that McCammon or any other superior at CPS made racially charged statements during the disciplinary process nor is there evidence beyond Smith's speculation that she was targeted for disciplinary action because of her race. In fact, her contention is that most of these were as a result of her refusal to participate in sex acts with McCammon.

Smith's claims about the unequal treatment in assigning cases between black and white employees is not sufficiently harassing to make out a hostile work environment claim. Harassing conduct includes severe "[d]iscriminatory verbal intimidation, ridicule, and insults," or conduct that is "physically threatening or humiliating." *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (internal quotations omitted) (alteration in original). It is conduct which creates an environment that is both objectively and subjectively abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993). Smith has never testified that she considered it to be abusive or threatening. Discriminating in

work assignments may be wrong, unfair, and discriminatory, but Smith has provided no evidence that it was accompanied by hostile, abusive, or threatening acts or words.

These claims would be more aptly analyzed under a disparate treatment theory. *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) ("Disparate treatment refers to deliberate discrimination in the terms or conditions of employment . . . on account of race, national origin, or gender.") Where, as here, there is no direct evidence of discriminatory intent, Smith must show that discrimination occurred through circumstantial evidence. To do so, she must first establish a *prima facie* case of discrimination by providing evidence that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) similarly situated persons were treated more favorably than she was. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If she provides such evidence, then CPS must produce some evidence of legitimate, non-discriminatory reason for the unequal treatment. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000)). If CPS does so, then the burden shifts back to Smith to produce evidence that either (1) CPS's "proffered reason is not true but is instead a pretext for discrimination;" or (2) CPS's "reason, while true, is not the only reason for its conduct, and another 'motivating factor'" is Smith's race. *Id.* (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Ultimately, Smith presents no evidence that she or other black employees were assigned more cases or less desirable cases than white employees, and thus that they were treated unequally. McCammon testified that CPS uses a computer program called Sharepoint to measure caseloads. Misty McCammon Depo. at 53 [33-2]. McCammon assigns cases based upon who had the lowest case load at the time the case came in. *Id.* Smith asserts in her response that Sharepoint was implemented several months after she sued CPS, and thus Sharepoint could not be evidence that McCammon was assigning cases fairly. Pls. Opp. Mem. at 3. However, Smith's deposition testimony reveals that it was only

eight months after filing her suit that she learned Sharepoint *existed*, not when it was implemented. Smith Depo. at 26. Before that, Smith was unaware how cases were assigned. *Id.* at 25. Smith has no evidence to rebut the contention that cases were assigned using Sharepoint. Further, Smith testified that she had no knowledge about whether her case load was higher or lower than any other worker in the officer. *Id.* at 58–59. Her sole basis for concluding that white workers had less or easier cases was that they "seemed" to have more free time. That speculation does not raise a triable issue of fact. Therefore, the Court grants summary judgment in favor of CPS on Smith's Title VII racial discrimination claims.

2. *Sex Discrimination*

Smith asserts that McCammon created a sexually hostile work environment and CPS is liable as a result. Sexually harassing behavior that creates sexually hostile work environment violates Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986)

CPS first argues that Smith did not timely file an EEOC charge of discrimination on her gender discrimination claims. In order to initiate a claim under Title VII, a plaintiff must first file a charge describing the alleged discrimination with the EEOC. 42 U.S.C.A. § 2000e-5(e)(1). This charge must be filed within 180 days after the alleged discrimination has occurred, or within 300 days if the party first filed a complaint with a state or local agency, which did not occur here. *Id.* If the plaintiff fails to do so, those claims are time-barred. *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009)

Generally, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Hostile work environment claims are not the product of discrete acts, however, because the actionable harassment necessarily

7

"occurs over a series of days or perhaps years . . ." *Id.* at 115. Thus, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

That distinction is of no importance, here, however, because Smith did not file her EEOC charge within 180 days of the last harassing act. Smith asserts three incidents give rise to her hostile work environment claim:

1. On March 17, 2017, Smith listened to phone call between McCammon and McCammon's boyfriend occurring over speakerphone, where they discussed group sex. Smith Depo. at 15–18.
2. A "few days after" the previous call, Smith and McCammon were having a personal phone conversation after work. Smith overheard McCammon's boyfriend invite Smith to join them for sex. *Id.* at 19–20.
3. During that same conversation, Smith asked McCammon, "would you really participate in something like [group sex]?" McCammon replied, "I can do a person and see them the next day and act like nothing never [sic] happened." *Id.* at 20.

*See* Pl. Memo in Opp. at 8. Smith admitted that no other sexually harassing incident occurred after those conversations:

> Q: Okay. I want to back up for a just a second. After the conversations with Misty and Perry in March of 2017, did you undergo or were you subjected to anything else that you considered to be sexual harassment after that?
>
> A: No.
>
> Q: That was the end of that?
>
> A: That was the end of that.
>
> Q: Okay after that did you have any sort of conversations with Misty, be it telephone or Facebook messenger or in person, where you discussed sex or —
>
> A: No.
>
> Q: — things of a sexual nature?
>
> A: No.

*Id.* at 45. Smith did not file her EEOC charge until February 6, 2018, almost an entire year after the last harassing act. Her hostile work environment is time-barred.

8

Assuming that they were not time-barred, however, Smith's claims would still fail. Both McCammon and Smith are female. The Court uses a two-step process for evaluating same-sex harassment cases. *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013). First, the Court must determine whether there is evidence that the harassment occurred "because of sex." Only if the Court finds that this evidence exists does it proceed to the second step: determining whether there is evidence of either a quid pro quo or hostile work environment claim.

Here, there is no evidence that McCammon's actions towards Smith occurred "because of sex." A plaintiff may establish that that harassment occurred "because of sex" in three ways:

> First, he can show that the alleged harasser made "explicit or implicit proposals of sexual activity" and provide "credible evidence that the harasser was homosexual." Second, he can demonstrate that the harasser was "motivated by general hostility to the presence of [members of the same sex] in the workplace." Third, he may "offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 89, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). There has been no assertion that conduct of the second or third type occurred. Nor does Smith provide evidence of the first type. Smith stated in her deposition that it was McCammon's boyfriend, not McCammon who proposed the sexual activity.[1] McCammon's boyfriend is not an employee of CPS, so CPS cannot be liable for his conduct. And the single statement that Smith did make (that she could "do a person and see them the next day and act like nothing never [sic] happened") was made only in response to a question Smith asked. It cannot be reasonably construed as a sexual proposal directed at Smith. "Whatever evidentiary route the plaintiff choses to follow, he or she must always prove that the

---

[1] In her brief, Smith asserts that McCammon also invited her to join in group sex with McCammon and her boyfriend. However, Smith never testified to that in her deposition testimony.

9

conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex." *Oncale*, 523 U.S. at 81, 118 S. Ct. 998 (cleaned up) (emphasis in original). Here, there is no evidence that the conduct Smith complains of was sexual discrimination. The Court, therefore, grants summary judgment in favor of defendants on Smith's sex discrimination claims.[2]

### B. 42 U.S.C. § 1981 racial discrimination claims

42 U.S.C. § 1981 provides that all persons shall enjoy the same rights "to enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" without regard to their race. Smith asserts that defendants discriminated against her on account of her race in violation of § 1981 in the same ways as set forth in her Title VII claim.

Defendants argue that Smith's § 1981 claim fails because she did not invoke § 1983 in her cause of action. The Fifth Circuit has held that § 1981 does not independently provide a cause of action against state actors. *Oden v. Oktibbeha Cnty, Miss.*, 246 F. 3d 458, 462–63 (5th Cir. 2001). Thus, the Fifth Circuit has traditionally required that § 1981 claims against state actors must be asserted through § 1983. *Id.* at 463–54. *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002).

However, in *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014), the Supreme Court overturned Fifth Circuit precedent requiring

---

[2] Though Smith does not explicitly make out this claim, any claim that McCammon began assigning her worse cases in retaliation for the complaint fails on the merits. To establish a *prima facie* case of retaliation the plaintiff must provide evidence that: 1) she engaged in activity protected by the statute; 2) an adverse employment action occurred; and 3) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 555–57 (5th Cir. 2007). Smith admits that McCammon assigned her poorer cases both before and after Smith filed her sexual harassment complaint. Smith Depo. at 58. Smith's complaint could not cause actions that occurred before her complaint was filed. There is no causal link between her complaint and being assigned worse cases. Further, as discussed above, Smith cannot prove that she was actually assigned more or worse cases than other employees.

plaintiffs to specifically invoke § 1983. Since *Shelby*, the Fifth Circuit has since issued decisions both questioning and citing with approval its prior decisions. *Compare Udeigwe v. Texas Tech Univ.*, 733 F. App'x 788, 793 (5th Cir. 2018) ("[Plaintiff's] pleadings do not make clear that he is properly pursuing his § 1981 claim through § 1983 . . .") (citing *Felton*, 315 F.3d at 470) *with Graham v. Bluebonnet Trails Cmty. Servs.*, 587 F. App'x 205, 206 (5th Cir. 2014) ("We have doubts about the district court's denial of [plaintiff's] section 1981 claim on the ground that she did not cite section 1983 as the procedural vehicle for asserting such a claim, particularly after the Supreme Court's decision in [*Shelby*].")

Nonetheless, the Court can resolve this issue without deciding whether Smith should have, at some point in this litigation, mentioned § 1983. Even if she had, Smith cannot maintain a § 1983 claim for violations of § 1981 against any defendant.

First, Smith cannot maintain a § 1983 claim against CPS or Dickinson and McCammon in their official capacities because they are entitled to sovereign immunity. A suit against a government official in his or her official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A suit against Dickinson and McCammon is a suit against CPS. CPS, as an arm of the State of Mississippi, enjoys sovereign immunity unless an exception applies.

There are three exceptions to sovereign immunity: abrogation, waiver, and the *Ex parte Young* doctrine. Congress has not abrogated state sovereign immunity for § 1983 claims, *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 773 (N.D. Miss. 2012), *aff'd*, 592 F. App'x 260 (5th Cir. 2014), or for violations of § 1981 for that matter. *Early v. S. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 F. App'x 698, 700 (5th Cir. 2007). Nor has Mississippi waived its sovereign immunity for these actions. *Yul Chu*, 901 F. Supp. 2d at 774. Finally, Smith seeks no prospective, injunctive relief against Dickinson or McCammon that would avail her of the *Ex parte Young* exception. *Id.* at 775 ("Plaintiff's Section 1983 claims for injunctive relief are permitted only if brought against the

appropriate state officials and seeking prospective relief to end a continuing violation of federal law."). Since no exception applies, CPS, and Dickinson and McCammon in their official capacities are immune.

Second, Smith fails to present evidence that McCammon violated § 1981. Race discrimination claims brought under § 1981 require the same proof as those brought under Title VII. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)). As stated above, Smith does not have sufficient evidence to establish her Title VII race discrimination claim. Therefore, she also does not have sufficient evidence to establish a § 1981 claim.

## IV. Conclusion

The Court finds there is no genuine issue of material fact with respect to any of Smith's claims. The Court grants the defendants' motion.

An order in accordance with this opinion shall issue.

This, the 16th day of September, 2019.

SENIOR U.S. DISTRICT JUDGE